**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 18, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP199**

STATE OF WISCONSIN

Cir. Ct. No. 2023TP7

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO G.G.W-H., A PERSON UNDER THE AGE OF 18:

GREEN COUNTY,

    PETITIONER-RESPONDENT,

  V.

K.M.S.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Green County: JANE E. BUCHER, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] K.M.S. appeals an order terminating her parental rights to her child, G.G.W.-H. She argues that her trial counsel was ineffective because, despite a pretrial ruling limiting evidence about the termination of K.M.S.'s parental rights to a younger daughter, counsel failed to keep certain testimony about that proceeding from the jury. K.M.S. also argues that there was insufficient evidence to sustain the jury's verdict that there were grounds for termination, and that the circuit court's discretionary decision that it was in the child's best interests to terminate K.M.S.'s parental rights was in error. I reject K.M.S.'s arguments and affirm.

## BACKGROUND

¶2 G.G.W.-H. was born in August 2020. In July 2021, Green County received a report that the child was neglected. K.M.S. told the social worker who responded that she could not care for the child because she was ill due to pregnancy. The home in which she was staying belonged to her then-boyfriend and his uncle, and they were unwilling to let K.M.S. and the child stay with them for long. K.M.S. refused the County's offer to temporarily house her and the child in a hotel, preferring to return to Minnesota where her family lived. Having determined that the child was unsafe in K.M.S.'s care, the County took the child into temporary physical custody and subsequently placed her in foster care. K.M.S. returned to Minnesota, though she traveled to Green County periodically, at County expense, to visit G.G.W.-H.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

¶3 In October 2021, G.G.W.-H. was adjudicated to be a child in need of protection and services (CHIPS). In September 2023, the County filed a petition for termination of K.M.S.'s parental rights, alleging as grounds continuing CHIPS under WIS. STAT. § 48.415(2) and failure to assume parental responsibility under § 48.415(6). The case was tried to a jury, which found both grounds proved. At the disposition hearing, the circuit court found that it was in the child's best interests that K.M.S.'s parental rights be terminated, and entered an order accordingly. K.M.S. filed a postdisposition motion alleging ineffective assistance of counsel, and the court denied the motion after a hearing. K.M.S. appeals.

¶4 This opinion will introduce additional facts relating to each of the three issues that K.M.S. raises on appeal as necessary below.

## DISCUSSION

¶5 In Wisconsin, there is a "two-part statutory procedure" for an involuntary termination of parental rights (TPR). *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first phase, which is the factfinding or "grounds" phase, the petitioner (here, the County) must prove the existence of "one or more of the statutorily enumerated grounds for termination of parental rights" by clear and convincing evidence. *Id.*; WIS. STAT. § 48.31(1). The two grounds at issue here are continuing CHIPS under WIS. STAT. § 48.415(2) and failure to assume parental responsibility under § 48.415(6).

¶6 To demonstrate the continuing-CHIPS ground, the County had to prove three elements: (1) G.G.W.-H. was adjudged a child in need of protection or services and placed outside the home for a cumulative period of six months or longer pursuant to one or more court orders containing the termination of parental rights notice required by law; (2) the County made a reasonable effort to provide

3

to K.M.S. the services ordered by the court; and (3) K.M.S. failed to meet the conditions established for the safe return of her child to K.M.S.'s home. WIS. STAT. § 48.415(2)(a). To demonstrate the failure-to-assume-parental-responsibility ground, the County had to prove that K.M.S. did not have a substantial parental relationship with G.G.W.-H. § 48.415(6). As noted, in this case the grounds phase was decided by a jury, which found both alleged grounds proved.

¶7 The second phase of an involuntary TPR proceeding is the "disposition" phase. If grounds have been found to exist in the first phase, the circuit court (rather than a jury) decides whether it is in the best interests of the child that the parent's rights be terminated. *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2). In deciding what is in the best interests of the child in a TPR proceeding, the circuit court's discretion is guided by § 48.426(3)(a)-(f), which provides a nonexclusive list of six factors that the court "shall consider." *State v. B.W.*, 2024 WI 28, ¶7, 412 Wis. 2d 364, 8 N.W.3d 22. Also as noted, in this case the court found that it was in the best interests of the child to terminate K.M.S.'s parental rights.

## I. K.M.S.'s counsel did not perform deficiently with respect to the circuit court's ruling limiting evidence about her younger daughter's Minnesota case.

¶8 K.M.S. argues that she did not receive the effective assistance of counsel in the grounds phase because her trial counsel made errors that allowed the jury to hear evidence related to the fact that her younger daughter had been subject to CHIPS and TPR proceedings in Minnesota. Specifically, K.M.S. contends that her trial counsel failed to claim the benefit of the circuit court ruling excluding that evidence by: (1) asking K.M.S. a question that "opened the door" to

4

the County's introduction of further evidence about the Minnesota proceedings involving the younger daughter; and (2) failing to object or move to strike when the County elicited more evidence on the same topic.

¶9 A parent in a TPR proceeding has a right to the effective assistance of counsel. *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. An ineffective assistance of counsel claim in a TPR case is analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Nicole W.*, 299 Wis. 2d 637, ¶33. To show ineffective assistance of counsel, a parent has the burden to demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the parent's defense. *See Strickland*, 466 U.S. at 687. Because I determine that K.M.S.'s counsel did not perform deficiently, this opinion will not address the question of prejudice. *See id.* at 697 (a court need not decide both deficient performance and prejudice if one is dispositive).

¶10 Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. Objectively reasonable assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* A court evaluates "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

¶11 Whether counsel's actions constituted ineffective assistance is a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). This court will not reverse the circuit court's factual findings unless they are clearly erroneous. *Id.* at 634. However, whether counsel's conduct constituted ineffective assistance is a question of law, which this court decides de novo. *Id.*

¶12 K.M.S. filed a motion in limine before trial, requesting a ruling that no evidence be introduced regarding either TPR or CHIPS proceedings involving any other child of K.M.S.'s. At the final pretrial hearing, the circuit court granted this motion in large part, but clarified that it would not "declare a mistrial if there is something minimal that comes in about the fact that there is another case."

¶13 On the morning of the first day of trial, the circuit court again addressed the motion in limine and stated that it would be "prejudicial to talk about another child [to whom K.M.S.'s parental rights were] terminated," but that the services that Minnesota had provided to K.M.S. were relevant. The court added that it did not "want it mentioned that there was anything adverse that ultimately resulted with that other child," and did not "want it brought up what the ultimate disposition of that situation was." The court instructed counsel for all parties that "[w]e need to minimize the references to the other child" and again focused on not revealing that K.M.S.'s parental rights to the other child had been terminated. Specifically, the court said "I'm saying that there can be some tangential references – I don't forecast how it might come in…. I think that it's prejudicial to have any knowledge transmitted to the jury about the fact that something adverse happened with that [other] child, and I would include a CHIPS proceeding along those lines."

¶14     When K.M.S. testified, her counsel asked her whether she and the County social worker had discussed having G.G.W.-H. placed in foster care in Minnesota so that K.M.S. could spend more time with G.G.W.-H. K.M.S. responded that these discussions had occurred. Later, the County's counsel asked K.M.S. how she had located a foster home in Minnesota. K.M.S.'s counsel objected, and the circuit court overruled the objection, determining that K.M.S.'s counsel had "opened the door" to such a question by asking about the possibility of placing G.G.W.-H. in a foster home in Minnesota. K.M.S. testified in response to the County's question that her younger daughter had been in the foster home.

¶15     On the next day of trial, the County's counsel asked the County social worker whether the Minnesota county in which K.M.S. lived would have provided K.M.S. with services related to G.G.W.-H. simply because K.M.S. lived in that county. The social worker testified that the Minnesota county would not provide K.M.S. with services simply because she lived there. The County's counsel then asked why the Minnesota county had, in fact, provided services to K.M.S., and K.M.S.'s counsel objected. At a sidebar, the County's counsel argued that it was important to show that the County had not failed to secure available Minnesota services for K.M.S. related to G.G.W.-H., as part of its case that it made a "reasonable effort to provide the services ordered by the court" as required to prove the continuing-CHIPS ground. K.M.S.'s counsel argued that the reason that K.M.S. had received the Minnesota county's services—that is, that they were related to her younger daughter—was irrelevant. The circuit court said the topic was not "super relevant" and that it would not "allow unfettered questioning" about it, but that it would permit the single question asked. When the County's counsel asked the question again, the social worker testified that the Minnesota

county had been able to provide services to K.M.S. because "they had their own case that involved [K.M.S.] and her younger daughter."

¶16    Later, the County's counsel asked the social worker how K.M.S. responded to suggestions that she come to Wisconsin to receive services from the County.  The social worker testified that after K.M.S.'s younger daughter was born, K.M.S. wanted to remain in Minnesota "to work towards reunification with [the younger daughter], and then after that case closed" K.M.S. had decided to stay in Minnesota.  K.M.S.'s counsel did not object.

¶17    In K.M.S.'s postdisposition motion, she alleged that counsel had provided ineffective assistance with respect to the above events.  The circuit court held a hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979), at which K.M.S.'s trial counsel testified.  On appeal, K.M.S. argues that trial counsel was ineffective in two ways: first in asking K.M.S. whether she had discussed placing G.G.W.-H. in foster care in Minnesota, and second in failing to object or move to strike in response to the subsequent questions and answers about K.M.S.'s younger daughter.

>   *A. K.M.S.'s counsel did not perform deficiently by asking K.M.S. whether she had discussed Minnesota foster homes with her social worker.*

¶18    In setting up this argument, K.M.S. asserts that the circuit court had ruled pretrial that the jury could not hear "any evidence of [her] CHIPS history regarding other children."  As the above recitation shows, the court's ruling was more nuanced; while the court specifically forbade evidence that "something adverse" had occurred in "a CHIPS proceeding," it allowed that "tangential references" to the proceedings might be necessary to explain the services that K.M.S. could or could not receive in Minnesota.  The court emphasized that it did

not want information to come in regarding "the ultimate disposition" of the case involving the younger daughter—that is, the termination of K.M.S.'s parental rights.

¶19     K.M.S. argues that trial counsel's question to her—whether K.M.S. and her social worker discussed placing G.G.W.-H. in foster care in Minnesota—"opened the door" to the admission of further evidence about K.M.S.'s younger daughter.  "Opening the door" is a phrase referring to the curative admissibility doctrine, which provides that "when one party accidentally or purposefully takes advantage of a piece of evidence that is otherwise inadmissible, the court may, in its discretion, allow the opposing party to introduce otherwise inadmissible evidence if it is required by the concept of fundamental fairness to cure some unfair prejudice."  *State v. Dunlap*, 2002 WI 19, ¶32, 250 Wis. 2d 466, 640 N.W.2d 112.

¶20     It is not clear, considering the circuit court's pretrial ruling, that trial counsel's question to K.M.S. introduced evidence that was inadmissible, such that the curative admissibility doctrine should apply.  Neither counsel's question nor K.M.S.'s answer provided the jury with any information about the younger daughter or the Minnesota proceedings concerning her.  It is also not clear that the County's later questions ran afoul of the court's pretrial ruling, the thrust of which was that the jury should not learn that a CHIPS case in Minnesota had ultimately brought about the termination of K.M.S.'s parental rights to her younger daughter.

¶21     Nevertheless, when K.M.S.'s trial counsel objected to the County's subsequent questions about the younger daughter, the County argued that trial counsel had "opened the door," and the circuit court agreed.  I therefore assume that K.M.S. is correct that it was her trial counsel's question regarding

conversations about placing G.G.W.-H. in a Minnesota foster home that placed these later questions in bounds.

¶22    Nevertheless, I conclude that trial counsel's decision to ask this question did not constitute deficient performance.  At the ***Machner*** hearing, counsel testified that she did not believe that the reason K.M.S. had suggested a particular foster home was relevant.  However, counsel thought it was important to show that K.M.S. had suggested a Minnesota foster home in order to demonstrate that the County had not pursued the opportunity to place G.G.W.-H. closer to K.M.S., and thus had failed to make a "reasonable effort" to provide services to K.M.S.  When counsel was asked whether she understood, at the time of trial, that discussing Minnesota foster homes would raise the possibility that more evidence might come in about K.M.S.'s younger daughter, she testified that this was why she had filed the motion in limine.  Counsel also testified that, despite the circuit court's ruling on the motion, she knew there was a risk that damaging information would come in, but she believed that the pretrial ruling would "minimize the ability to damage the case" by excluding evidence that K.M.S.'s parental rights to her younger daughter had been terminated.

¶23    The circuit court concluded that K.M.S.'s trial counsel had not performed deficiently, finding that counsel "had the Court's impressions in mind" and "knew what she was doing"—that is, trying to bring in the availability of Minnesota services without permitting the jury to hear a great deal of testimony about the younger daughter.[2]  This is a finding of fact to which I must defer.

---

[2] The circuit court also concluded that even if trial counsel performed deficiently, there was no prejudice to K.M.S., a conclusion that I do not address.

***Pitsch***, 124 Wis. 2d at 634. And accepting this fact—that counsel made a strategic decision to ask about the availability of Minnesota foster homes—I cannot find that counsel performed deficiently unless that decision was "irrational or based on caprice." ***State v. Breitzman***, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93.

¶24 K.M.S. argues that it was unreasonable for trial counsel to ask her about Minnesota foster homes, knowing that K.M.S.'s knowledge of these homes came from her younger daughter's placements. And, the argument continues, that question allowed the County to elicit the fact of the younger daughter's placements (over counsel's objection). K.M.S.'s argument depends on just the kind of hindsight a reviewing court must avoid. *See **Breitzman***, 378 Wis. 2d 431, ¶65 ("'Reviewing courts should be highly deferential to counsel's strategic decisions and make every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'") (quoted source omitted).

¶25 As the record shows, counsel's question did not itself elicit any information about K.M.S.'s younger daughter. At most, it raised the risk that the County would seek to bring in information about that daughter. As the circuit court found, K.M.S.'s counsel was aware of that risk, and counsel testified that she believed that this risk, having been mitigated by the pretrial ruling, was outweighed by the benefit of showing that there were services that the County failed to pursue. K.M.S. does not show that this calculation was irrational, and, accordingly, does not show that counsel performed deficiently in asking K.M.S. about Minnesota foster homes.

*B. K.M.S.'s counsel did not perform deficiently in response to the additional testimony about K.M.S.'s younger daughter.*

¶26    K.M.S. also argues that her trial counsel performed deficiently by responding with "passivity" to the County's efforts to introduce further evidence about K.M.S.'s younger daughter.  Here, too, K.M.S. fails to contend with what the record shows about trial counsel's actions.  Rather than responding with "passivity" as K.M.S. asserts, counsel objected to and argued against the introduction of most of this evidence; counsel was simply overruled by the circuit court.  Further, regarding the one answer to which counsel did not object, she explained at the ***Machner*** hearing that she believed that moving to strike the answer—which the jury had already heard—would only highlight the significance of evidence that she did not wish to emphasize.

¶27    When the County's counsel asked K.M.S. how she knew of a particular Minnesota foster home, K.M.S.'s trial counsel objected that the question was beyond the scope of cross-examination.  As discussed above, the County's counsel responded that K.M.S. had "opened the door"; K.M.S.'s counsel responded that her own questioning had not gone "into why, and how, and when." The circuit court overruled the objection.  When the County's counsel later asked K.M.S. why a Minnesota county was able to provide services to K.M.S., K.M.S.'s counsel again objected that the answer would be irrelevant, and the court held a sidebar, at which K.M.S.'s counsel argued that the question should not be permitted.  Again the court permitted the question, but it also instructed the County that it could not pursue the matter more deeply.

¶28    K.M.S. argues that her trial counsel should have specifically objected on the basis of WIS. STAT. § 904.03, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger

of unfair prejudice." But counsel had already argued—in her motion in limine and at the final pretrial hearing—that evidence about the younger daughter would be unfairly prejudicial, and had received the circuit court's ruling that much, though not all, such evidence (particularly evidence about the fact of the termination of K.M.S.'s parental rights to the younger daughter) would be excluded. Counsel's objections and argument during trial must be viewed in this context: K.M.S.'s position on the prejudicial nature of the objected-to evidence was clear, and the court's rulings on the individual questions hewed to its pretrial ruling. The introduction of evidence about the younger daughter occurred not due to "passivity" by counsel, nor due to a failure to offer arguments about unfair prejudice; rather, the evidence came in despite counsel's efforts. K.M.S. fails to show that these efforts fell outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

¶29 K.M.S. further argues that her trial counsel should have objected and moved to strike when, in response to the County's question about K.M.S.'s attitude about moving to Wisconsin to receive services, the social worker testified that K.M.S. had wanted to "work towards reunification" with her younger daughter, and also that the "case" involving the younger daughter had "closed."

¶30 K.M.S. reasonably does not argue that her trial counsel should have objected to the County's question, as the question itself sought no information about the younger daughter. Rather, K.M.S. argues that counsel should have moved to strike the social worker's answer, which volunteered information about the younger daughter's separation from K.M.S. and the fact that the case involving the younger daughter had "closed." However, at the *Machner* hearing, counsel testified that the fact of the case being "closed" did not tell the jury how it had ended, saying it "could have been closed because [K.M.S.] had her daughter

13

back." Counsel further testified that she was concerned that moving to strike would do more harm than good:

> [T]here is a fiction in law that the judge can tell the jury to disregard something and they really will. But they've heard it; you can't unhear it, so do I want to emphasize it and wave that I think that's important[?] In that case I decided it was ambiguous enough that it was not worth pointing that red arrow at that statement.

Counsel's explanation provides a rational strategic ground for not moving to strike the social worker's answer. *Strickland*, 466 U.S. at 689. K.M.S. has not shown that her trial counsel performed deficiently in this respect.

### II. The evidence on grounds was sufficient.

¶31 K.M.S. argues that the evidence presented at the grounds phase was insufficient to sustain the jury's verdicts on either of the two grounds at issue: continuing CHIPS and failure to assume parental responsibility. Because these issues were tried to a jury, this court must affirm the verdict "'if there is any credible evidence, when viewed in a light most favorable to the verdict, to support it.'" *Outagamie County v. Michael H.*, 2014 WI 127, ¶21, 359 Wis. 2d 272, 856 N.W.2d 603 (quoted source omitted). This court must uphold a jury verdict even if the evidence supporting it "'[is] contradicted and the contradictory evidence [is] stronger and more convincing.'" *Id.* (quoted source omitted).

¶32 K.M.S. does not acknowledge this standard of review, and her argument as to each ground is cursory. Regarding the continuing-CHIPS ground, she suggests that the County failed to prove that it made a reasonable effort to provide her the services ordered by the court because the County failed to accommodate her diagnosed dyslexia and did not provide any services other than "providing bus tickets." This argument is refuted by the record.

¶33 There was testimony that the County provided G.G.W.-H. with an assessment for the Birth to 3 and Early Head Start programs; provided K.M.S. with various modes of transportation as well as a location to have supervised visits with G.G.W.-H.; paid for a companion to travel with K.M.S. by bus from Minnesota to assuage K.M.S.'s anxiety about travel; provided K.M.S. with a hotel and meals during her visits to Wisconsin; helped coordinate a psychological evaluation for K.M.S. in Minnesota; provided K.M.S. with parenting education; offered additional parenting education classes that K.M.S. did not attend because she was in Minnesota; offered K.M.S. housing that K.M.S. declined in Wisconsin; worked with the Minnesota county to ensure K.M.S. was offered housing in Minnesota; and supervised K.M.S.'s case when she was present in Wisconsin. This testimony indisputably meets the requirement that there be "any credible evidence" supporting the jury's finding that the County made a reasonable effort to provide services, and is sufficient to sustain the verdict on the continuing-CHIPS ground. *Id.*

¶34 Regarding the ground of failure to assume parental responsibility, K.M.S. asserts that by placing G.G.W.-H. at a foster home in Wisconsin, the County ensured that K.M.S., living in Minnesota, could not establish "daily supervision" over G.G.W.-H., which is one of the considerations of the failure-to-assume ground. WIS. STAT. § 48.415(6)(b). As a result, K.M.S. argues, the County obstructed "the very placement that would have allowed for parental participation." K.M.S. cites no authority for this argument as a basis for invalidating the jury's finding on failure to assume parental responsibility, but there are cases discussing whether a parent has been subjected to an "impossible condition." *See, e.g.*, ***Kenosha County Dep't of Human Servs. v. Jodie W.***, 2006 WI 93, 293 Wis. 2d 530, 716 N.W.2d 845. However, here, K.M.S.'s argument

15

fails to acknowledge the testimony that she failed to comply with many conditions—including those that had nothing to do with her moving to a different state from the one in which G.G.W.-H. lived—which, if complied with, would have permitted her to have a greater role in G.G.W.-H.'s life and to assume parental responsibility. These included her failure to: sign releases to permit the County to monitor her compliance with and participation in services and treatment; keep the County apprised of her address; provide safe and appropriate care for G.G.W.-H. during visits; take advantage of opportunities for contact with G.G.W.-H.; engage in recommended mental health treatment; and undergo a psychological evaluation. I conclude that there was some credible evidence from which the jury could conclude that K.M.S. failed to assume parental responsibility for G.G.W.-H. *Michael H.*, 359 Wis. 2d 272, ¶21.

### III. The circuit court did not erroneously exercise its discretion in determining that terminating K.M.S.'s parental rights was in the child's best interests.

¶35     This court reviews a circuit court's decision on disposition for an erroneous exercise of discretion. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). An appellate court "will sustain a discretionary decision as long as the circuit court examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Gahl v. Aurora Health Care, Inc.*, 2023 WI 35, ¶18, 413 Wis. 2d 418, 989 N.W.2d 561.

¶36     K.M.S. does not argue that the circuit court failed to consider any of the six mandatory statutory factors. Rather, she raises two issues that she suggests compromised the court's consideration of those factors, but neither issue has merit.

¶37 First, K.M.S. asserts that the report submitted by the social worker pursuant to WIS. STAT. § 48.425 failed to include a "medical record of the child" as required by § 48.425(1)(am). K.M.S. notes that G.G.W.-H. had a "complex eye condition" and suggests that more information about this condition was necessary for the circuit court to determine whether K.M.S. "or a relative could eventually manage this care with proper support." But there was substantial testimony about this condition, and the treatment G.G.W.-H. received for it, at the disposition hearing. K.M.S. does not explain how additional information would have aided the court in its discretionary decision.

¶38 Second, K.M.S. notes that there was testimony that G.G.W.-H. does not know her younger sister (K.M.S.'s younger daughter), and K.M.S. argues that the County created this situation by placing G.G.W.-H. in a foster home in Wisconsin while the sister lived in Minnesota. K.M.S. does not explain how the County's asserted responsibility for the lack of a sibling relationship undermines the circuit court's discretionary decision. The question at a TPR disposition hearing is what is in the best interests of the child, and one of the factors that a circuit court must consider is substantial relationships between the child and the child's birth family. *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2) and (3)(c). K.M.S. does not argue that the court failed to reasonably assess G.G.W.-H.'s lack of a substantial relationship with the sister; thus, her assertions that the County's actions contributed to this lack of a relationship are irrelevant.

## CONCLUSION

¶39 For the reasons stated, I affirm the order terminating K.M.S.'s parental rights to G.G.W.-H.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.